## BAZEMORE v. THE STATE.

1. Under the police power, laws may be passed for regulating common occupations which from their nature afford peculiar opportunity for imposition and fraud.
2. Because of its value, the ease with which it is taken from the field, and the difficulty of detecting the thief, the State may regulate the sale of seed-cotton, and fix a punishment upon the person who buys in violation of the terms of the statute.
3. The question as to the constitutionality of the local act for Muscogee county is controlled in principle by the decision in *Jenkins* v. *State,* 119 *Ga.* 430.
4. The indictment followed the terms of the statute, and was not subject to demurrer because of the failure to describe the land on which the seed-cotton was grown. The evidence supported the verdict, and it was not error to refuse to grant a new trial.

Submitted January 18, — Decided January 26, 1905.

Indictment for unlawful purchase of seed-cotton.    Before Judge Seabrook.    Muscogee superior court.    December 17, 1904.

Bazemore was charged with the offense of a misdemeanor; for that, without the written consent of the owner of the land whereon the same was produced, and without the written consent of the agent of such owner, he did, between the 1st of Aug. and the 20th of Dec., to wit, on the 10th of Nov., 1904, unlawfully purchase 98 pounds of cotton in the seed from one Leonard Huling. The defendant demurred on the ground, that the local act creating

such an offense (Acts 1889, p. 1391) was void under the constitutions of Georgia and of the United States, in that it deprived a person of the use of his property without due process of law, and deprived a citizen of the rights, privileges, and immunities created by the constitutions of Georgia and of the United States, and was not a valid exercise of the police power of the State. He specially demurred for the further reason, that the indictment did not set forth or describe the premises whereon the cotton was grown, or the name of the owner thereof, so that the defendant could be informed of what he was expected to defend. The demurrer was overruled. The evidence showed that Huling got the seed-cotton from Bryant; that he carried it to Bazemore, who asked to let him have the cotton: whereupon Huling said he understood that everybody could not buy cotton without a license; to which Bazemore replied, that there was no such law, and that anybody could buy cotton who wanted to. Thereupon Huling sold the cotton to Bazemore for $3. He carried no written order of any kind allowing him to sell the cotton; did not know on whose land the cotton was raised. The defendant was convicted, and assigns error on overruling the demurrer and refusing to grant a new trial.

*T. T. Miller*, for plaintiff in error.

*S. P. Gilbert, solicitor-general*, contra.

LAMAR, J. (After stating the foregoing facts.)   The right to be at large without the right to act would be but to live in a prison of extended bounds. The liberty which is guaranteed by the constitution means far more than freedom from servitude. An integral and essential element is the right to use all one's powers of mind and body, to engage in any lawful occupation upon such terms as he may choose, and to make contracts with other citizens who are as free as himself. Presumptively every one may agree upon the terms on which he will sell his own property or buy that of another. This right can only be limited and made penal by necessity of preserving the public health, the public morals, or the public safety, included in which would be the necessity of protecting the property of the public. Instances may be found in liquor laws; in statutes requiring the written consent of parents or friends before liquor or opium can be sold to certain persons; the requirement as to inspection of fertilizers, turpentine, flour; and similar statutes too numerous to mention. The act in

question is in pursuance of the police power (Civil Code, § 5734), which includes the right on the part of the State "to enact rules for the conduct of the most necessary and common occupations, when from their nature they offer peculiar opportunities for imposition and fraud." Cooley's Con. Lim. (7th ed.) 887; Turner v. Maryland, 107 U. S. 41 et seq. Seed-cotton, while an article of value, is not ordinarily an article of commerce. Usually it is ginned and packed before being offered for sale. Even small quantities, however, are so much more valuable than similar weight of corn, wheat, oats, or other farm products as to afford special temptation for petty larceny. When stolen from the field of the owner, it is almost impossible to be identified. It is therefore especially difficult to make laws relating to larceny or receiving stolen goods effective in preventing the crime by punishing the thief. The evil is sought to be met by prohibiting the sale at night, or, as in the act now under consideration, by requiring the written consent of the owner of the land on which it was grown, so as thereby to afford a means by which the property may be traced, and, the thief punished if it was in fact unlawfully taken. The present case does not involve any question as to what language must be used in such consent, or whether a bill of sale from the planter would be sufficient. The validity of a similar statute was recognized in *Jenkins* v. *State*, 119 *Ga.* 430.

To require the State to prove the ownership, or to describe the land on which the cotton had been grown, would nullify the statute as completely as to declare it unconstitutional. There is no rule of pleading which requires a decision which would bring about such a result. The indictment follows the statute, and was not subject to the demurrer. Compare Penal Code, § 929; *Hill* v. *Dalton*, 72 *Ga.* 314 (1); *Williams* v. *State*, 89 *Ga.* 483. 　　　*Judgment affirmed. All the Justices concur.*